ROXANNE BONAR   SBN: 242925
BONAR LAW GROUP
1 CENTERPOINTE DR. #315
LA PALMA, CA 90623
TELEPHONE # : (714) 452-1428  |  FACSIMILE #: (714) 452-1418
Email: rbonar@bonarlawgroup.com

**Attorney for Plaintiffs Stephen & Ami Borish**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**ALLEN JOSEPH MACQUARRIE**<br><br>Debtor | Case No.: 2:19-bk-14528-ER<br>Chapter 7<br><br>**Complaint Objection to the Dischargeability of Debt Under 11 U.S.C., § 523(a)(2)(A)**<br>**(Fraud & False Pretenses)** |
| **STEPHEN BORISH  AND AMI BORISH**<br>         Plaintiffs,<br>   vs.<br>**ALLAN J MACQUARRIE** (Aka: A.J. Macquarrie, Allan Macquarrie)<br>**CELGINE TABINGO , CLARKE MILLER ,**<br>**KarmaBox Vending, MyKarmabox.com, URBAN VENDOR, INC ; and** DOES 1 through 20, inclusive,<br><br>Defendants | **Bankruptcy Trustee:**<br>Timothy Yoo<br>Levene Neal Bender Yoo & Brill LLP<br>**800 S. Figueroa St #1260**<br>**Los Angeles, CA 90017** |

COMES NOW, Plaintiffs, Stephen & Ami Borish, through their counsel,  husband and wife asks this court to forbid the dischargeability of Defendant/Debtor's listed debts and to provide redress for and relief from the Defendant's wrongful actions as Plaintiffs suffered damages,  alleging that the defendants committed fraud.

1. The court has jurisdiction to hear this Complaint pursuant to 28 U.S.C §157(a),(b)(1) (b)(2)(I) (core proceeding), §1334(b) and 11 U.S.C §523(c).

2. On April 19, 2019 – Debtor/Defendant, **ALLEN JOSEPH MACQUARRIE** viled a voluntary Chapter 7 petition, commencing the above case.

*Objection to the Dischargeability of Debt Based on Fraud*– Macquarrie

- 1 -

3. Plaintiffs, Stephen & Ami Borish is the holder of a claim against the above Debtor/ Defendant, Allen Joseph Macquarrie arisubf from October to January 17, 2018. Where f

4. Where Debtor/ Defendant, Allen Joseph Macquarrie operated a business that lured customers to give him money for a said number of machines, knowing full well that the company did not intend to fulfill its obligations. Debtor/ Defendant, Allen Joseph Macquarrie operated through false pretenses and false representations and commited actual fraud, therefore fulfilling the elements of 11 U.S.C., § 523(a)(2)(A).

5. Here, Debtor/ Defendant, Allen Joseph Macquarrie's debt IS nondischargeable on grounds of fraud.

## FACTS

6. In 2017, Plaintiffs, Stephen & Ami Borish, wanted their family to earn extra income, as Mr. Stephen Borish sole income was not enough to cover the monthly expenses of their small family. Plaintiffs, Stephen & Ami Borish, have two young toddler boys.

7. In the summer of 2017, Plaintiffs, Stephen & Ami Borish, researched companies to invest money in order for them to have extra income. They researched vending machine companies, as it allowed Stephen Borish to continue with his full time job and Ami, his wife would be able to manage the vending machines and allow her to take care of her two young children.

8. KarmaBox is doing business for Urban Vendor, Inc – whose company promised top of the line machine equipment sales, negotiated pre-selected locations, on the ground location scouts, training, support and profit. Karma Box sold Vending machines to those like the plaintiff promising income and support.



*Pictured Above: Sample Advertised KarmaBox Machine that Investors were lured to buy*

9. In or around September /October 2017, a representative from KarmaBox, Defendant, and Clarke Miller contacted the plaintiffs and represented that he was the Business Development Consultant for Karma Box. Defendant, Clarke Miller was very upbeat and persuasive, he continuously stated that the plaintiff's were getting into this business at the prime time and that the Long Beach, Lakewood area was a prime market for KarmaBox machine placement. Through email and text messages, Defendant, Clarke Miller convinced the Steve and Ami Borish to contact Guidant Financial as their recommended source to obtain funds in order for the investors to get the money in order to buy the machines. ***See Attached Exhibit 3.***

10. In or around November/December 2017, Plaintiffs, Stephen & Ami Borish contemplated starting with 5 machines to start with because they were worried about starting with too many vending machines. Plaintiffs saw the similar looking vending machines on Craigslist.com - Plaintiffs met with the person selling them on 12/15/17 and he had many

*Objection to the Dischargeability of Debt Based on Fraud– Macquarrie*

negative things to say about the business. Plaintiff immediately contacted Clarke Miller with their concerns. Defendant, Clarke Miller set up a call with us and CEO AJ Macquarrie for 12/17/17 at 2pm. Plaintiffs informed them that they were considering starting with 5 machines. AJ assured me that KarmaBox was different from the other company, as they provided unparalleled support and better machines and healthier products and that if the plaintiffs bought less machines, they were missing out on a great opportunity. However, Defendants, Allan J Macquarrie (Aka: A.J. Macquarrie, Allan Macquarrie)   Clarke Miller (Aka: Clarke C Miller) advised Plaintiffs that would be unwise due to the cash flow and secured locations and missed opportunities and income. Defendants, together, convinced the plaintiffs to buy ten brand new machines to start and promised one free machine.

    a. See Paragraph 15 & Exhibit 8 below.

11. In or around October 13, 2017, Plaintiffs, Stephen & Ami Borish signed a purchase agreement with Karma Box vending for ten (10) machines with KarmaBox for $77,000 and promising to give 1 (one) free machine to the plaintiffs. The agreement promised 11 machines in total with support and scouted locations.    ***See Attached Exhibit 5.***

12. In or around January 2018, Defendant by Defendant, Allen Joseph MacQuarrie personally called, texted and emailed plaintiffs regarding the wiring of the money and inquiring when the transfer would be made, Defendant expressed they wanted to get started on the Borish ELB account soon.

13. In or around January 17, 2018, Plaintiffs, Stephen & Ami Borish wired $77,000 USD (Seventy Seven Thousand US Dollars) to KarmaBox, in which the defendants acknowledged receipt of funds.    ***See Attached Exhibit 7.***

    a. A vending machine retails around about $3,000. (Through Costco or other reliable vendors)  However, Plaintiffs paid over $7,000 for ***each*** machine which was to include the services outlined in our contract and procured locations that will generate money.

14. Defendants convinced Plaintiffs that conservative monthly net revenue estimates for five KarmaBox machines is $1,500 a month. This is now proven to be a lie - this was not true.

*Objection to the Dischargeability of Debt Based on Fraud*– Macquarrie

- 4 -

However, ten machines would bring a conservative monthly net revenue estimate of $3,000/monthly if Plaintiffs bought 10 (ten) machines.

15. In February 2018, Defendants represented that many machines were available in their warehouse for proper placement and that the machines would be "ready to go." When in fact, there were no machines available. This is now proven to be a lie - this was not true.

16. In or around March 2018, Plaintiffs were lead to believe that secured locations were being sought after and that there was a hot lead. **This is now proven to be a lie - this was not true.**

17. Defendants represented to Plaintiffs that the vending machines with do $25 on average per day. In reality, Plaintiffs and other owner operators can claim that machines can average only $3 per day. In addition, Defendants represented that each machine can make $1 per bend. In turn, Plaintiffs had to throw away all the $3 healthy snacks since they all expired, this cost a lot of damages to the plaintiffs as they were buying the food to stock the vending machines and they were all expiring.

18. Plaintiffs never received the 10 machines they ordered and the locations they ordered – in fact, defendants did not receive the machines they ordered, but rather received only 2 defective USED machines -

19. In or around April 2018, plaintiffs grew worried as there were no communications from any of the defendants. Plaintiff's usual contacts, CelgineTobingo, AJ MacQuarrie or Clarke Miller were not replying back and or communicating with the Plaintiffs.

20. Plaintiff started a social group on Facebook regarding KarmaBox, to their surprise, there are others who are in similar positions, where Defendants have taken their money and did not fulfill their orders of Vending machines and orders. Soon, thereafter, the Plaintiffs discovered that this was a scam.

21. Plaintiffs have spent countless nights worried about the loss of their life savings. This loss have created a family hardship on the Borish Family, wherein they are unable to manage their daily living expenses and unable to sleep due to the financial stress and embarrassment of this scam.

22. In or around April 11, 2018 Plaintiffs finally hear from CEO AJ MacQuarrie via email. Sends a statement that the company is going out of business and that he is filing bankruptcy along with an apology. Defendant MacQuarrie informs in his letter that he has no assets and that he will be filing for bankruptcy.

23. Defendant MacQuarrie's letter informs Plaintiffs to contact his attorney, Shawn Huston. Plaintiff contacts this purported attorney and inquires about Defendant MacQuarrie's letter and intent to file for Chapter 7 Bankruptcy. Plaintiffs were informed that Defendant, MacQuarrie has not paid him his attorney's fees and has not yet filed for Chapter 7 or 13 bankruptcy. Huston states that he is being bombarded with calls from upset KarmaBox franchisees and that Defendant AJ MacQuarrie has not paid him and has been unresponsive.

24. In or around May 2018, Plaintiffs file a police report with Lakewood Police Department, located in Lakewood, California wherein the plaintiff were assigned an investigator. Investigator, Borges informs Plaintiffs that he was able to speak to Defendant, Celgine Tabingo, who admits that that there were nearly 70 franchisees that she worked with in which approximately 36 were scammed out of their money. Defendant, Celgine also states that she was not paid her last pay check.

25. In August 2018 – Plaintiffs brought forth a lawsuit against Debtor/ Defendant, Allen Joseph Macquarrie, in the Superior Court of California - Los Angeles Norwalk Court house, Case Number: VC067384 alleging:

   1. Breach of Contract
   2. Intentional Misrepresentation
   3. Negligent Misrepresentation
   4. Fraud
   5. Malice
   6. Constructive Fraud
   7. Breach of Fiduciary Duty
   8. Conversion
   9. Accounting
   10. Unjust Enrichment
   11. Unfair Business Practices
   12. Fraudulent Concealment
   13. Gross Negligence
   14. Return of Property
   15. Intentional Infliction of Emotional Distress

*Objection to the Dischargeability of Debt Based on Fraud*– Macquarrie

- 6 -

26. Debtor/ Defendant, Allen Joseph Macquarrie, was served and failed to answer a complaint.
27. The plaintiffs have filed a default, but was denied due to service. However, the plaintiffs plan to file again.

### FEDERAL AND STATE COURTS HAVE CONCURRENT JURISDICTION OVER 11 U.S.C. § 523(a)(3) DISCHARGEABILITY CLAIMS BUT FEDERAL COURTS HAVE EXCLUSIVE JURISDICTION OVER FRAUD DISCHARGE CLAIMS UNDER 11 U.S.C. § 523(a)(2) (BREACH OF

28. Plaintiff incorporates by reference all of the preceding allegations of this Complaint, as though fully set forth herein. Plaintiff repleads and incorporates Paragraphs 1-28.
29. In Rein v. Providian (9th Cir. 2001) 252 F.3d 1095, fn. 16, the United States Ninth Circuit Court of Appeals stated that, "Bankruptcy courts and state courts have concurrent jurisdiction over all nondischargeability actions except those brought under § 523(a)(2), (4), (6) and (15)". The exceptions to discharge set out in § 523(a)(2), (4) and (6) are claims based on money or credit obtained by fraud or false pretenses, defalcation, embezzlement, larceny, and willful and malicious injury by the debtor.
30. Non-dischargeabilty claims based on 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6) are not self executing but must first be determined by court order to be non-dischargeable.
31. Under 11 U.S.C. § 523(a)(3)(B), claims not based on breach of contract but which arise from fraud, embezzlement, larceny, rape, assault/battery or other such willful and intentional conduct, the claim is not automatically excepted. The creditor must not only prove elements (1) and (2) listed above with respect to § 523(a)(3)(A), but must further file and successfully prosecute an adversary proceeding in Bankruptcy Court to prove the debt was indeed intentional or willful within the meaning of the exceptions carved out in 11 U.S.C. § 523(a)(2), (4) or (6). A key difference is that a claim may be excepted under 11 U.S.C. § 523(a)(3)(B) even if the estate had no assets to distribute.
32. For the foregoing reasons, Debtor/ Defendant, Allen Joseph Macquarrie's filing of Chapter 7 bankruptcy and listing Plaintiffs, Stephen & Ami Borish, as creditors is nondischargeable.

33. As a result, Plaintiffs, Stephen & Ami Borish's damages in the amount of $100,000 (One Hundred Thousand Dollars) is non dischargeable pursuant to 11 U.S.C., § 523(a)(2)(A).

## PRAYER

Wherefore, Plaintiffs, Stephen & Ami Borish, pray and seek that this Honorable Court find for the following:

(1) For attorneys fees in an amount according to proof pursuant to Cal. Civ §3426.4

(2) Debtor/ Defendant, Allen Joseph Macquarrie's filing of Chapter 7 bankruptcy and listing Plaintiffs, Stephen & Ami Borish, as creditors is nondischargeable and grant a judgment against Debtor/ Defendant, Allen Joseph Macquarrie, under 11 U.S.C., § 523(a)(2)(A) and §523(a)(2)(C).

(3) For costs for suit herein incurred.

(4) For such other and further relief that the Court deem just and proper

Date: May 15, 2019

THE BONAR LAW GROUP


Bonar Law Group

By: *Roxanne B.*

**ROXANNE C. BONAR**
*Attorney for Plaintiffs,*
*Stephen & Ami Borish*

*Objection to the Dischargeability of Debt Based on Fraud*– Macquarrie

## PROOF OF SERVICE
### 1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF ORANGE COUNTY:

I am employed in the County of Orange, State of California. I am over eighteen years of age and not a party to the within action. My business address is: Bonar Law Group | **1 Centerpointe Dr. Suite #315 | La Palma, CA 90623.**

On May 15, 2019, I served the foregoing document described as :

- **Bankruptcy Petition #: 2:19-bk-14528-ER CM/ECF - U.S. Bankruptcy Court (Debtor: Allen Joseph MacQuarrie)**
- **Objection to the Dischargeability of Debt Based on Fraud- Macquarrie** (11 U.S.C., § 523(a)(2)(A).

[ ] by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list :

[ x ] by placing [ ] the original [ x ] a true copy thereof enclosed in sealed envelopes addressed as follows : **SERVICE LIST**

| 1<br>CELGINE TABINGO<br>3625 Grove Street #259<br>Lemon Grove, CA 91945 | 2<br>CLARKE MILLER<br>4602 PARKS AVE<br>LA MESA, CA 91942-8809 |
|---|---|
| 3<br>Shawn P.K. Huston<br>1650 Hotel Circle North, Suite #201<br>San Diego, CA 92108 | 4<br>Timothy Yoo (TR)<br>Levene Neale Bender Yoo & Brill LLP<br>800 South Figueroa Street, Suite 1260<br>Los Angeles, CA 90017 |
| 5<br>OFFICE OF THE US TRUSTEE<br>U.S. Trustee<br>United States Trustee (LA)<br>915 Wilshire Blvd, Suite 1850<br>Los Angeles, CA 90017 | 6<br>Allen Joseph MacQuarrie<br>BK Petition #: 2:19-bk-14528-ER<br>3705 W. Pico Blvd., # 15<br>Los Angeles, CA 90019<br>(not his real address) |

[ _X_ ] **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service in the ordinary course of business, on the same day, in La Palma, California, with postage thereon fully prepaid. I am aware that on the motion of the party served, that service is presumed invalid if the postal cancellation date or postage meter date is more than one (1) day after the date of deposit for mailing in affidavit.

[ _____ ] **BY PERSONAL SERVICE:** I delivered each such document by hand to each addressee above.

[ _____ ] **BY FACSIMILE/FAX:** By use of a fax machine, I served a copy of the within document(s) on the above interested parties at the fax numbers listed above. The transmission was reported as complete and without error.

Executed on **May 15, 2019**, at La Palma, California.

[ x ]  STATE : I declare under penalty of perjury under the laws of the state of California.

Signature : *Loida Oñate* (signature)
Type or Print Name :  Loida Oñate